[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband was married to the defendant wife in Laguna Hills, California, on May 3, 1980. He has resided continuously in the State of Connecticut for at least one year prior to the commencement of these proceedings.
Two children were born to the wife, both are issue and are minors, to wit: Christy Michelle, born July 5, 1981; and Jenna Lynn, born September 7, 1984.
From the evidence presented, the Court finds that the marriage has broken down irretrievably, there is no prospect for any reconciliation, and a decree of dissolution may enter.
This is a marriage of almost thirteen years, which has been marked by considerable problems. The wife testified that the husband was physically and mentally abusive to her on numerous occasions as well as being unfaithful. On the other hand, the husband's testimony is that his wife has a violent temper and has even pulled a gun on him. He admits to many physical confrontations with his wife, but alleges that, in most instances, she was the cause and perpetrator of the violence.
The Court finds from the testimony that both of the parties have contributed to the breakdown. However, if fault were to be apportioned, the Court is of the mind that the husband contributed more to the breakdown.
The issue which consumed the major portion of the testimony revolved around the custody-visitation claims of the parties. The Court need not recite the allegation and cross allegations made by the parties. The Court is most impressed with the recommendation for visitation made by the attorney for the minor children because it provides for maximum participation with the children by both of the parties.
Both the mother and father obviously love the children. This love should be further expressed by working jointly so as to minimize arguments which involve the children. Also, the Court does not believe that the children are at risk if they occasionally travel with their father.
The parties are in apparent good health. CT Page 3915
The husband is a pilot for American Airlines and has been so employed for seven years. His gross income is $1,900 per week. His financial affidavit reflects net weekly income of $1,236. The Court believes that this figure is misstated and that his net given a true tax consideration will be approximately $1,350. The Court will predicate its child support on this latter figure.
The husband has a bachelor's degree from the University of Connecticut.
The wife has a bachelor's in English and a master's degree in education. She is not presently teaching, but rather is self-employed as a day care provider. She reports gross income of $215 weekly and $205 net. She further testified that she will require one year of schooling to become certified in multi subjects for grade school and two years of schooling if she wanted to teach in high school. The Court feels that she should pursue her efforts to obtain employment in the field in which she is trained.
Both of the parties would like to have the Court order that he or she be vested with title in said premises. The Court is aware of the fact that the home was owned by the husband's family and the nature of the acquisition of title and the financial assistance given by plaintiff's father. The Court is also aware that this has been the children's home and it would be in their best interest to continue to live there if at all possible.
From the evidence presented, the Court further finds as follows:
(a) There is due the sum of $44,000 to Jack Pettit.
(b) The husband received substantial tax refunds for the years 1989, 1990 and 1991.
(c) The plaintiff's family factored in a $15,000 inheritance credit toward the purchase of the marital home.
(d) The defendant has the ability to earn substantially more money than she is presently earning. If CT Page 3916 she completed her education and/or made a more concerted effort in her field of study reaching this potential could be accelerated.
The Court, having considered all of the evidence and taking into consideration all of the mandates of Connecticut General Statutes 46b-81, 46b-82 and 46b-84, further orders as follows:
(1) The parties shall have joint custody of the minor children with the physical custody vested in the defendant mother.
(a) Father be granted reasonable rights of visitation to include his current visitation arrangement plus the following:
On those occasions a lapse of visitation of nine days or greater occurs between father's normally scheduled monthly flights, he will be permitted to have the children one weekday during that period of time from after school until 7:00 p.m. during the school year, and from noon until 6:00 p.m. on non-school days. If the parties cannot agree on a day such will occur on the third weekday following father's return to Connecticut.
(b) Mother will have the children annually on Mother's Day (at 10:00 a.m. until 6:00 p.m. when it conflicts with father's scheduled visit) and father will have the children annually on Father's Day at 10:00 a.m. until 6:00 p.m.
(c) Effective 1994 and on even-numbered years thereafter, father will have the children for the school winter (February) vacation, and mother will have the children for the school spring (April) vacation. Such vacation period will include the first weekday of the vacation at 10:00 a.m. until 6:00 p.m. of the last weekday of the vacation, (i.e. Monday at 10:00 a.m. until Friday at 6:00 p.m.) with the exception of those instances when father's normally scheduled visit occurs consecutive with his scheduled vacation time at which time he will be permitted to keep the children in accordance with the hours of visitation.
(d) Effective 1993 and on odd-numbered years CT Page 3917 thereafter, mother will have the children for the school winter (February) vacation. Father will have the children or the spring (April) vacation. Such visit will be exercised in accordance with the conditions listed in item number 4.
(e) Father will have the children annually for the first two weeks of July and the first two weeks of August in odd-numbered years and the second two weeks of July and second two weeks of August in even-numbered years.
(f) Mother will have the children annually for the last two weeks of July and the last two weeks of August on odd-numbered years.
(g) Commencing in 1993, and in odd-numbered years thereafter, mother will have the children on Christmas Eve at 4:30 p.m. until Christmas Day at 2:00 p.m. On these years, father will have the children on Christmas Day at 2:00 p.m. until December 27, at 6:00 p.m. and again on New Year's Eve (December 31) at 5:00 p.m. until New Year's Day at 6:00 p.m. In the event Mr. Pettit is working during the scheduled Christmas Day visit, he will have the children in his possession for a fifty-two hour period commencing at 2:00 p.m. on the day following his return to Connecticut.
(h) Commencing in 1994 and in even-numbered years thereafter, father will have the children on Christmas Eve at 4:30 p.m. until 10:00 p.m. and again on Christmas Day at 4:00 p.m. until December 26 at 6:00 p.m. On those years, mother will have the children on Christmas Eve at 10:00 p.m. until Christmas Day at 4:00 p.m., and again on New Year's Eve (December 31) at 5:00 p.m. until January 1, at 6:00 p.m. In the event Mr. Pettit is working during his scheduled Christmas visit, he will have the children in his possession on the day following his return to Connecticut from 2:00 p.m. until 6:00 p.m. the following day.
(i) Effective 1993 and in odd-numbered years thereafter, father will have the children for the holidays of Memorial Day and Thanksgiving Day from 10:00 a.m. until 6:00 p.m. with the exception of those instances when his normally scheduled visit coincides with his scheduled holiday at which time he will be permitted to keep the children overnight in accordance with the normal hours of visitation. On those CT Page 3918 years, mother will have the children on Easter and Labor Day (and from 10:00 a.m. until 6:00 p.m. when it conflicts with father's scheduled time with the children.)
(j) Effective 1994 and in even-numbered years thereafter, mother will have the children for the holidays of Memorial Day and Thanksgiving (and from 10:00 a.m. until 6:00 p.m. when it conflicts with father's scheduled visit.) On those years, father will have the children for the holidays of Easter and Labor Day from 10:00 a.m. until 6:00 p.m. or in accordance with the conditions stated in item number 10.
(k) On those years, father's July extended includes July Fourth, mother will have the children on Labor Day (10:00 a.m. until 6:00 p.m.) that year even if such is a scheduled holiday for father.
(l) Parents, when both in Connecticut, will be permitted two-and-a-half hours personal contact with the children on each child's birthday. On those occasions, on the children's birthdays, that either parent is travelling, or the children are travelling with a parent, the Pettits will make prior arrangements for the children to have telephone contact with the other parent on that day.
(m) On those occasions that either parent transports the children by airplane, they may elect to travel on standby status only if they or a third party mutually agreeable to both parents accompanies the children.
(n) The parties will give one another sixty-day prior written notice of their intent to relocate outside of the State of Connecticut.
(o) Father will have the right to personally contact the children's physician and school teacher, to arrange personal appointments with these professionals, and to have all information pertaining to the children released to him.
(p) Father will have the right to authorize emergency medical treatment for the children in mother's absence and his inability to contact her.
(q) Mother will consult with father prior to CT Page 3919 making a decision pertaining to the children that involves non-emergency major medical and dental procedures, major disciplinary problems, major academic problems, and a change of school placement.
(r) The children can accompany the father on his trips provided the trips do not interfere with the children's schedule. Mother will be provided with the place and the telephone number where the children can be reached.
(2) The husband shall pay as child support to the wife, the sum of $450 per week, which the Court finds to be in substantial compliance with the guidelines.
(3) The husband shall pay to the wife as periodic alimony, the sum of $200 per week as periodic alimony, until the happening of the first of the following events:
(a) death of either party;
 (b) cohabitation by the wife as that term is contemplated under our statutes and case law;
(c) seven years from this date.
In no event, however, shall alimony be modifiable as to term.
(4) The husband shall be entitled to claim the children as exemptions on his tax return(s) and the wife shall execute all documents necessary to effect this order.
(5) The marital premises shall remain in the joint names of the parties (non-survivorship). Neither shall encumber the premises except by mutual consent in writing. The wife shall be permitted to have exclusive possession of said premises, and she shall be responsible for the payment of the first mortgage, insurance, taxes and normal maintenance. All major repairs shall be paid for equally by the parties. Major repairs shall be those which require an expenditure greater than $400.
The second mortgage held by Citicorp shall be maintained 75 percent by the wife and 25 percent by the CT Page 3920 husband. Both parties are enjoined from further borrowing on the home equity account. The husband shall be responsible for the payment of the Jack Pettit loan. He shall hold the wife harmless and indemnify her from any and all claims.
When the oldest child reaches her 19th birthday, the husband shall have the right to purchase the marital home at the then fair market value. Should the wife wish to sell the premises prior to that time, the husband shall have the same right of first refusal. Should he not exercise said rights, the wife may purchase the home at a fair market value. In any event, the gross proceeds are to be distributed as follows:
 (a) payment of the first mortgage and Citycorp Home Equity loan;
 (b) all closing and real estate commission expenses;
 (c) balance of proceeds 40 percent to wife and 60 percent to husband.
It is the order of this Court that the Jack Pettit mortgage be the total responsibility of the husband.
In the event of foreclosure or any deficiency from foreclosure or otherwise, said deficiency shall be divided equally between the parties. In computing said deficiency, if any, the Jack Pettit mortgage will not be included in said computations.
(6) The husband shall maintain medical and dental insurance for the minor children as available through his employment. All unreimbursed medical and dental expenses shall be equally divided. The provision of 46b-84(c) shall apply.
(7) The husband shall make available to the wife any applicable COBRA benefits at her expense.
(8) The husband shall name the children as irrevocable beneficiaries on his life insurance policy or policies available through his employment for so long as he is responsible for their support. CT Page 3921
(9) Except as otherwise provided, each of the parties shall be responsible for the payment of his or her liabilities shown on the financial affidavits filed with the court during the dissolution proceedings.
(10) The furnishings in the marital home shall be the exclusive property of the wife except as to any personal items or clothing which the husband can claim.
(11) The husband shall, by a Qualified Domestic Relations Order, assign to the wife 20 percent of the value of his pension from American Airlines at the time of his retirement.
(12) Each of the parties shall pay to Attorney Lenes the sum of $1,300 within ninety days.
(13) The husband shall pay to the wife as an allowance to prosecute, within ninety days, the sum of $4,500.
(14) Counsel for the plaintiff shall prepare the judgment in accordance with the Court's orders.
(15) An immediate wage garnishment shall issue to secure the payment of alimony and support.
Mihalakos, J.